[Docket No. 26.]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

|  |  |
|---|---|
| JAMAL ADDISON and JASMINE C. SINGLETON, | |
| Plaintiffs, | Civil No. 1:23-cv-22956 (RMB) (MJS) |
| v. | **OPINION** |
| SIGNET JEWELERS LIMITED d/b/a KAY JEWELERS, STERLING JEWELERS, INC., MYA BERRY, JOHN DOES 1-10 (names being fictitious and unknown), and ABC CORPS. 1-10 (names being fictitious and unknown) | |
| Defendants. | |

**RENÉE MARIE BUMB, Chief United States District Judge:**

Plaintiffs Jamal Addison (Addison) and Jasmine C. Singleton (Singleton) have sued Defendants Signet Jewelers Limited d/b/a Kay Jewelers (Kay Jewelers), Sterling Jewelers, Inc. (Sterling), and Mya Berry (Berry), claiming that they violated federal and state anti-racial discrimination laws when they refused to adjust Addison's watch. [Notice of Removal ¶ 1, Ex. A, ¶ 26 (Compl.) (Docket Nos. 1, 1-1).] Defendants now move for summary judgment, contending Plaintiffs' claims fail because, among other reasons, they have not shown that their race played any role in the incident.

Having reviewed the record, the Court finds Plaintiffs have not shown a dispute of material fact to resist summary judgment, and therefore, the Court **GRANTS** Defendants' summary judgment motion.

## I.  BACKGROUND

### A.  The Jewelry Store Incident[1]

Singleton, an African American woman, went to a Kay Jewelers store to have links removed from a watch that she had bought for Addison, an African American male.  [Defs.' Statement of Material Facts in Supp. of Mot. for Summ. J. ¶¶ 8-9, 11, 16 (DSOMF) (Docket No. 26-2); Pls.' Resp. to DSOMF ¶¶ 8-9, 11, 16 (PRESP) (Docket No. 28-1).]  While Singleton went into the jewelry store, Addison remained in the car with their three children.  [DSOMF ¶ 12; PRESP ¶ 12.]  When Singleton entered the store, the store's manager, Berry, who is also African American, was speaking to a customer who appeared to Singleton to be African

---

[1] Plaintiffs have not complied with Local Civil Rule 56.1(a) because they filed their Responses to Defendants' Statement of Material Facts and Counter-Statement of Facts in the same document.  L. Civ. R. 56.1(a) (requiring "[e]ach statement of material facts [to] be a separate document"); *see also Ross-Tiggett v. Reed Smith LLP*, 2024 WL 1928176, at *2 (D.N.J. Apr. 30, 2024) ("The place to set forth a competing narrative is in a supplemental statement of material fact, which the moving party can respond to in turn."), *appeal dismissed*, 2025 WL 1589262 (3d Cir. Feb. 28, 2025).  In addition, many of Plaintiffs' responses to Defendants' factual assertions are nonresponsive.  For example, Defendants assert that "When Ms. Singleton entered the store, Store Manager Mya Berry ("Ms. Berry") was busy assisting another customer, who appeared to Ms. Singleton as an African American female."  [DSOMF ¶ 13.]  Plaintiffs denied that assertion, stating, "When Ms. Singleton entered the store, Ms. Berry was having a personal conversation with another person regarding a party or a wedding. Ms. Singleton was never acknowledged by Ms. Berry and was instead ignored so Ms. Berry could have a personal conversation."  [PRESP ¶ 13.]  Plaintiffs' response is not responsive because they did not address the later portion of the factual assertion relating to the customer's race.  At her deposition, Singleton testified that the customer was African American.  Rule 56.1(a) requires a party opposing summary judgment to file a responsive statement of material facts "addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."  Courts disregard responses that "recite factual irrelevancies."  *Helms v. Ryder*, 2017 WL 1356323, at *1 n.1 (D.N.J. Apr. 12, 2017).  And courts can treat any fact "not properly addressed by the party opposing it" as "undisputed."  *Ullrich v. U.S. Sec'y of Veterans Affs.*, 457 F. App'x 132, 137 (3d Cir. 2012).  The Third Circuit has upheld district courts' decisions deeming as admitted factual assertions where the party opposing summary judgment failed to properly respond to a factual assertion.  *See, e.g.*, *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 F. App'x 84, 87 (3d Cir. 2019) (holding district court properly deemed as admitted factual assertions where plaintiff denied assertions in defendant's statement of material facts and "then wrote answers that did not actually reject the paragraphs it responded to").  This Court will deem as admitted any factual assertion that Plaintiffs have failed to properly respond to as required by Rule 56.1(a) unless the assertion is contradicted by record evidence.  *See Fantastic Sams Franchise Corp. v. Weekes*, 2023 WL 2696595, at *1 n.3 (D.N.J. Mar. 29, 2023) (presuming movant's facts undisputed "unless demonstrated by the parties' record evidentiary submissions" where non-movant's statements in responsive statement of facts were nonresponsive).

American.  [DSOMF ¶¶ 13-14; Certification of Wayne E. Pinkstone, Esq. (Pinkstone Certif.) ¶ 5, Ex. D (Singleton Dep.) 41:5 to 17 (Docket Nos. 26-3, 26-4).]   Also in the store, waiting to be helped, were an elderly Caucasian man and woman.  [DSOMF ¶ 15; Singleton Dep. 41:23 to 42:13.]  After minutes of waiting, the store assistant manager, Franlis Rivera (Rivera), helped Singleton.  [DSOMF ¶ 16; PRESP ¶ 16.]   Rivera confirmed the watch had been purchased at a Kay Jewelers store so the link removal would be free.  [DSOMF ¶¶ 17-18.]

According to Defendants, Rivera wanted to fit the watch to Addison's wrist because "every person's wrist is different, and all watches are different."  [*Id.* ¶ 17.]  Plaintiffs claim Rivera was "pushy" and refused to remove the links as Singleton requested.  [PRESP ¶ 17.]  In any event, Singleton left the store to retrieve Addison and returned to the car to watch the children so Addison could go into the store.  [DSOMF ¶¶ 19, 28; PRESP ¶¶ 19, 28.]  After Singleton left the store, Rivera helped another customer.  [DSOMF ¶ 24; PRESP ¶¶ 19, 28.]  Singleton did not interact with Berry.  [DSOMF ¶ 22; PRESP ¶ 22.]

The parties hotly contest what happened next, but these disputes are largely not material to resolve this motion.  According to Defendants, when Addison entered the store, Rivera and Berry were helping other customers.  [DSOMF ¶¶ 29-30.]  Berry was assisting a customer who Addison believed was Black.  [*Id.* ¶ 32.]   Addison approached Berry, interrupting her exchange with that customer, and telling her "that his wife sent him in to have links removed from his watch."  [*Id.*]   Addison told Berry and Rivera that they "should have just done" what Singleton asked them to do.  [*Id.* ¶ 33.]  Berry then started helping Addison, telling him "that it would be best to size his wrist to fit the watch[.]" [*Id.* ¶ 34.]  Addison responded, "just do your f*** job and take out the links."  [*Id.* ¶ 35.]

Berry took Addison's watch to the repair area to remove the links. [*Id.* ¶ 36.] Meanwhile, Addison continued to make statements like "should have just d[one] what he asked." [*Id.*] Berry told Addison to calm down and assured him that she was removing the links. [*Id.* ¶ 37.] But Addison continued to curse, telling Berry to "[t]ake my f*** links out[.]" [*Id.* ¶ 38.] Rivera intervened, telling Addison to calm down and assuring him that Berry was removing the links. [*Id.* ¶ 40.] Addison yelled at Rivera, telling him and Berry that they needed to do their "f***cking job when people ask for things." [*Id.* ¶ 41.] Addison then called Berry a "piece of shit." [*Id.* ¶ 42.] At that point, Berry stopped working on Addison's watch, stating, "I'm done[,]" and returned the watch to Addison. [*Id.* ¶ 43.]

But Addison persisted, telling Berry to "finish [the job]." [*Id.* ¶ 44.] Berry refused. [*Id.*] Because Addison continued to demand that Berry finish adjusting his watch, Berry instructed Addison to leave the store, or otherwise, she would call the police. [*Id.* ¶¶ 44-45.] At that point, Addison called Berry "a bitch." [*Id.* ¶ 46.]

Eventually, Berry called the police, explaining she had an irate customer in the store who refused to leave. [*Id.* ¶ 46.] At that time, Berry "was scared" and "didn't know what [Addison] was doing." [Pinkstone Certif. ¶ 8, Ex. F (Berry Dep.) 22:1 to 17 (Docket No. 26-4).] She "didn't know if he was going outside to get a gun, to get something, to come back in the store. He told me he wasn't leaving and that [she] was changing his links." [*Id.*] The police arrived at the store, and officers spoke to Singleton, Addison, and Berry. [DSOMF ¶¶ 51-52.] The police told Singleton and Addison that they would have to leave the store. [*Id.* ¶ 52.] Singleton and Addison later went to another Kay Jewelers store to have the watch adjusted. [DSOMF ¶ 53; PRESP ¶ 53.] And they have since visited other Kay Jewelers stores and had "positive experiences." [DSOMF ¶ 54; PRESP ¶ 54.]

4

Addison tells a different tale. When he entered the store, Addison claims he was "ignored and forced to wait." [Pls.' Counterstatement of Material Facts in Opp'n to Defs.' Mot. for Summ. J. ¶ 6 (PSOMF) (Docket No. 28-1).] Addison acknowledges that he interrupted Berry's interaction with another customer, but asserts that he did so politely, by saying, "Excuse me . . . [m]y wife sent me here to get these links knocked out." [PSOMF ¶ 7; Pinkstone Certif. ¶ 7, Ex. F (Addison Dep.) 27:9 to 21 (Docket No. 26-4).] Berry then started walking toward the counter, saying "I'm tired of you people." [PSOMF ¶ 7; Addison Dep. 27:22 to 28:2.] In response, Addison called Berry a "piece of shit[.]" [Addison Dep. 28:12 to 15.] After Addison made that comment, Berry "grabbed the phone" and stated, "I'm calling the cops. I'm tired of you people." [*Id.* at 29:13 to 21.] Berry then called the police. [PSOMF ¶ 9.] Police officers later arrived and spoke to Addison who recounted his version of events. [Addison Dep. 37:5 to 23.]

## B. The Lawsuit

Plaintiffs sued Defendants in New Jersey state court, claiming they violated federal and state anti-discrimination laws, including New Jersey's Law Against Discrimination (NJLAD), Title II of the Civil Rights Act of 1964 (Title II), and 42 U.S.C. § 1981. [*See generally* Compl.] They also assert a state-law claim for intentional infliction of emotional distress. [*Id.*]

Defendants removed Plaintiffs' lawsuit here and now move for summary judgment on all of Plaintiffs' claims. [Notice of Removal.]

## II. DISCUSSION

### A. Summary Judgment Standard

Courts must grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" only if it might impact the "outcome of the suit under the governing law." *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 261 (3d Cir. 2012).  A dispute is "genuine" if the evidence would allow a reasonable jury to find for the nonmoving party.  *Id.*  To prevail on a summary judgment motion, the moving party must show the nonmovant cannot establish one or more essential elements of its case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  And if the nonmoving party "'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,' then summary judgment is appropriate for the moving party."  *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022) (alterations in original) (quoting *Celotex*, 477 U.S. at 322).

### B. Plaintiffs' § 1981 Claim Fails

Section 1981 "prohibits racial discrimination in the making and enforcement of contracts[.]"  *Brown v. Philip Morris Inc.*, 250 F.3d 789, 796 (3d Cir. 2001) (quoting 42 U.S.C. § 1981(a)).  To prevail on a § 1981 claim, Plaintiffs must show:  (1) that they "belong[] to a racial minority; (2) an intent to discriminate on the basis of race by [Defendants]; and (3) discrimination concerning one or more of the activities enumerated in § 1981[,]" like making and enforcing contracts.  *Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 797 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n.*, 288 F.3d 548, 569 (3d Cir. 2002)).  Plaintiffs must prove that Defendants intentionally discriminated against them.  *Gen. Bldg.*

6

*Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982) (holding "§ 1981 . . . can be violated only by purposeful discrimination"). They must also show "that, but for race, [they] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Plaintiffs can show discriminatory intent either by direct or indirect evidence. *See, e.g.*, *Maultsby v. RIH Acquisitions NJ, LLC*, 2011 WL 6779556, at *3 (D.N.J. Dec. 27, 2011). Direct evidence "demonstrates that the decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010) (citation and internal quotation marks omitted). That evidence must be: (1) "strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the [defendant's] decision[;]" and (2) "connected to the decision being challenged by the plaintiff." *Id.* (citation and internal quotation marks omitted, alteration in original). This is a "high hurdle" to overcome. *Id.*

If direct evidence is lacking, a plaintiff can rely on indirect evidence that requires courts to apply the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1983) burden-shifting framework.[2] *Maultsby*, 2011 WL 6779556, at *3; *see also McClain v. Avis Rent A Car Sys.*, Inc.,

---

[2] In *Comcast*, the Supreme Court held that a Section 1981 plaintiff must prove that race was a but-for cause for the plaintiff's injury. 589 U.S. at 341. In doing so, the *Comcast* Court rejected the plaintiff's argument that *McDonell Douglas* established a contrary "motivating factor" causation test. *Id.* at 340. The Court explained that "[w]hether or not *McDonnell Douglas* has some useful role in § 1981 cases," *McDonnell Douglas* neither "mention[ed] the motivating factor test" nor "address[ed] causation standards." *Id.* Rather, the *McDonnell Douglass* framework is "a tool for assessing claims, typically at summary judgment, when the plaintiff relies on indirect proof of discrimination." *Id.* Following *Comcast*, the Third Circuit held the *McDonell Douglas* framework applies to employment discrimination claims under Section 1981. *Williams v. Tech Mahindra (Americas) Inc.,* 70 F.4th 646, 651–52 (3d Cir. 2023). And outside the employment context, courts have applied the *McDonell Douglas* framework for Section 1981 claims even after *Comcast*. *Bassi v. Mount Airy, No. 1. LLC*, 2024 WL 3605946, at *4 (M.D. Pa. July 31, 2024) (collecting cases), *aff'd sub nom. Bassi v. Mount Airy, No. 1 LLC*, 2025 WL 1341875 (3d Cir. May 8, 2025); *accord Simpkins v. Ferndale-F, LLC*, 2024 WL 4363114, at *3 (E.D. Mich. Sept. 30, 2024); *Amaefuna v. Gamsby*, 2023 WL 2637423, at *4 (E.D. Tenn. Mar. 24, 2023); *Brown v. Harford Bank*,

648 F. App'x 218, 222 (3d Cir. 2016).  Under that framework, Plaintiffs must establish a prima facie case of racial discrimination.  *Anderson,* 621 F.3d at 270.  If they do, Defendants then shoulder the burden of production to show "a legitimate, nondiscriminatory reason for the action."  *Id.* at 271 (citation and internal quotation marks omitted).  If Defendants make that showing, the burden of production reverts to Plaintiffs to show pretext.  *Id.*  To defeat summary judgment, Plaintiffs must discredit Defendants' "proffered reasons" or "adduc[e] evidence that discrimination was more likely than not a . . . determinative cause of the adverse . . . action." *Id.* (citation and internal quotation marks omitted, omissions in original).  While the burden of production may shift, the burden of persuasion never leaves Plaintiffs.  *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994); *see also Anderson*, 621 F.3d at 270.

Here, Plaintiffs offer several pieces of evidence they claim suffices to show discriminatory intent:  Kay Jewelers' staff ignoring Singleton when she entered the store, Berry's use of the phrase "you people" while speaking to Addison, Berry calling the police on Addison and her description of him to the police, and her belief that Addison may go get a gun.  [Pls.' Mem. of Law in Opp'n to Defs.' Mot. for Summ. J. 5-7 (Pls.' Opp'n Br.) (Docket No. 28).]  That evidence, taken together, is not enough to show discriminatory intent.

### 1.  Plaintiffs offer no direct evidence of discrimination

Plaintiffs' proffered evidence is not "so revealing of discriminatory animus" to qualify as direct evidence of discrimination.  *Anderson*, 621 F.3d at 269 (cleaned up).

---

2022 WL 657564, at *9 (D. Md. Mar. 4, 2022); *Touray v. Burlington Coat Factory Warehouse Corp.*, 2021 WL 6051146, at *2 (W.D. Wash. Dec. 21, 2021).  This Court will apply the *McDonell Douglas* framework to determine whether Plaintiffs have shown intentional discrimination.

Take the phrase "you people."[3]  The Third Circuit has already held it too ambiguous to constitute direct evidence of discrimination.  *Id.* (collecting cases and holding the phrase "you people" in the statements "you people don't understand how the process works" and "you people don't understand the loan process" did not constitute direct evidence of discrimination); *see also Miller v. Thomas Jefferson Univ. Hosp.*, 565 F. App'x 88, 93 (3d Cir. 2014) (finding plaintiff failed to establish a prima facie case of racial discrimination under § 1981, and reasoning that "a single utterance of the phrase 'you people'" is insufficient "to establish a claim of racial discrimination"); *see generally West v. AM/NS Calvert*, 350 F. Supp. 3d 1227, 1244 (S.D. Ala. 2018) (collecting cases that have found the phrase "you people" was ambiguous and did not constitute direct evidence of discrimination).

Still, Plaintiffs ask this Court to find that the phrase "'you people' . . . has a long history in this country as a derogatory term towards African Americans."  [Pls.' Opp'n Br. at 6.]  But Plaintiffs have not connected the dots to show how Berry's use of the phrase "you people" referred to race.   There can be competing interpretations of the phrase "you people" given the record here.  *Compare Joseph v. New Jersey Transit Rail Operations Inc.*, 586 F. App'x 890, 892 (3d Cir. 2014) (recognizing "that racial animus will sometimes lurk beneath the surface of [the] phrase ['you people']," but explaining "something more than speculation is needed to connect those dots"), *with Umani v. Michigan Dep't of Corr.*, 432 F. App'x 453, 459 (6th Cir. 2011) (explaining the phrase "you people" is ambiguous and can have multiple

---

[3] Defendants deny that Berry used the phrase "you people."  [Defs' Resp. to PSOMF ¶ 7 (DRESP) (Docket No. 31-1).]  Despite the "he said, she said" nature of this factual dispute, the Court will assume Berry used the phrase because the Court must view the facts in the light most favorable to Plaintiffs.  *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).  That said, and as will be discussed, the phrase "you people" as used here is too ambiguous to show discriminatory intent.

interpretations, and as such, finding the phrase "does not qualify as a clear reference to race and is not direct evidence of discrimination").

To accept Plaintiffs' argument, this Court would have to infer the phrase "you people" had a racial meaning. But "[d]irect evidence of discrimination" is "evidence which, if believed, would prove the existence of the fact [in issue] *without inference or presumption.*" *Torre v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (citation and internal quotation marks omitted, emphasis in original). Because this Court would need to resort to inferences (and speculation), the phrase "you people" as used here does not qualify as direct evidence of discrimination. *Anderson*, 621 F.3d at 269.

### 2. Plaintiffs have not established a prima facie case of racial discrimination to maintain a Section 1981 claim

Plaintiffs have offered no evidence from which a rational factfinder could infer that Defendants intended to discriminate against them. The evidence they rely on is too ambiguous and requires speculation to draw an inference of racial discrimination. They also take the record out-of-context to manufacture a factual dispute.

Take Plaintiffs' claim that Kay Jewelers' staff, including Berry, ignored them when they entered the store. [Pls.' Opp'n Br. at 5-6.] Plaintiffs offer no explanation on how a jury could infer racial discrimination from that evidence. If Plaintiffs claim they were ignored because of their race, their subjective beliefs are not enough to show discriminatory intent. *See Davis v. City of Newark*, 285 F. App'x 899, 903 (3d Cir. 2008) (dismissing Title VII and NJLAD hostile work environment claims, reasoning a plaintiff cannot "sustain a claim simply by asserting an event and then asserting that it was motivated by racial bias"); *see also Brumfield v. Atl. City Hous. Auth.*, 2025 WL 227311, at *8 (D.N.J. Jan. 17, 2025) (granting

summary judgment on § 1981 claim, holding plaintiffs' "subjective belief alone that they have suffered racial discrimination is insufficient").

Likewise, the phrase "you people" is too ambiguous to infer racial discrimination. *Miller*, 565 F. App'x at 93; *see also Univ. of Maryland E. Shore Nat'l Alumni Ass'n, Inc. v. Schulte Hosp. Grp., Inc.*, 2024 WL 3424088, at *7 (D. Md. July 15, 2024) (dismissing § 1981 claim finding the "phrase 'you people' is insufficient to demonstrate discrimination"). As explained above, Plaintiffs have not connected the dots between their race and Berry's use of the phrase "you people." The Court would have to resort to speculation to infer that Berry was referring to Addison's race when she said, "you people." "[S]peculation will not defeat summary judgment." *Monaghan v. Cnty. of Gloucester*, 599 F. Supp. 3d 196, 204 (D.N.J. 2022). And the fact that Berry and Addison are both African Americans makes it unlikely that Berry's use of the phrase "you people" and her refusal to adjust Addison's watch was racially motivated. *Cf. Currie v. Arthur*, 2012 WL 1715390, at *4 (E.D. Va. May 15, 2012) ("Even taking the facts of this case in the light most favorable to the Plaintiff, it is unlikely that any jury would find that a watermelon left by one African–American on the desk of another African–American was racially motivated.").

Turning to Berry's deposition testimony about her belief on Addison leaving to get a gun, Plaintiffs unreasonably stretch the inferences to be drawn from that testimony. Plaintiffs argue that Berry's belief that Addison had a gun rested on a "racist assumption." [Pls.' Br. at 7.] But that argument takes Berry's deposition testimony out-of-context. Berry testified that when she called the police "she was nervous" and "scared" because she "did not know what [Addison] was doing" because he told Berry that he "wasn't leaving and that [she] was changing his [watch] links." [Berry Dep. 22:1 to 17.] Nothing in that testimony reveals

Berry's belief about Addison having a gun had anything to do with his race.  What's more, nothing in the police report reveals that Berry told the police that Addison had a gun. [Pinkstone Certif. ¶ 6, Ex. E (Police Report).]

Finally, while Plaintiffs "can prove intentional discrimination by pointing to 'comparator' evidence[,]" *Burns v. SeaWorld Parks & Ent., Inc.*, 2024 WL 1660514, at *10 (E.D. Pa. Apr. 17, 2024), they offer none here.  The record does not show that Defendants treated similarly-situated people outside Plaintiffs' race differently.  *Williams v. Wells Fargo Bank, N.A.*, 2016 WL 4370033, at *4 (D.N.J. Aug. 10, 2016); *see also Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010).  In fact, the undisputed evidence shows the opposite.  When Singleton entered the store, Berry was helping another African American customer while Caucasian customers were waiting for service.  [DSOMF ¶¶ 13-15; Singleton Dep. 41:5 to 17, 41:23 to 42:13.]  And when Addison entered the store, Berry was assisting a customer Addison believed to be Black.  [DSOMF ¶¶ 29-32; Addison Dep. 26:13 to 20.]  Because Plaintiffs lack any comparator evidence, a rational factfinder cannot infer racial discrimination.

All in all, Plaintiffs' evidence does not establish a prima facie case of racial discrimination.  So their Section 1981 claim fails.

### 3.  Defendants have proffered a non-discriminatory reason for their refusal to adjust Plaintiffs' watch that Plaintiffs have not shown is pretextual

Even if Plaintiffs had established a prima facie case of racial discrimination, Defendants have offered "a legitimate, nondiscriminatory reason" for not adjusting Plaintiffs' watch.  *Anderson,* 621 F.3d at 270.  Indeed, Berry stopped working on Addison's watch because of his conduct and the fact that Addison called Berry a "piece of shit."  [DSOMF ¶¶ 32-43; Berry Dep. 16:22 to 24 ("[H]e called me a piece of shit, and then I told him at that

time, 'I'm done. I'm not servicing you anymore.'"); *see also* Defs.' Mem. of Law in Supp. of Summ. J. 8-9 (Def. Br.) (Docket No. 26-1).] Defendants have met their "relatively light burden" to shift the burden back to Plaintiffs to show pretext. *Fuentes*, 32 F.3d at 763.

To avoid summary judgment, Plaintiffs must present some evidence "from which a factfinder could reasonably either (1) disbelieve [Defendants'] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendants'] action." *Id.* at 764. Plaintiffs "can discredit [Defendants'] proffered reasons by 'demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the . . . proffered legitimate reasons for [their] action that a reasonable factfinder *could* rationally find them unworthy of credence, and hence infer that [they] did not act for the asserted non-discriminatory reasons." *Anderson*, 621 F.3d at 277 (emphasis in original) (quoting *Fuentes*, 32 F.3d at 765). They must show pretext by a preponderance of the evidence. *Fuentes*, 32 F.3d at 763. Plaintiffs have not done so.

Plaintiffs offer no evidence to discredit Defendants' reasons for refusing to service Addison. In fact, Addison admits that he called Berry "a piece of shit." [Addison Dep. 25:16 to 22; 28:12 to 15; 29:13 to 17.] And Addison's deposition testimony reveals that Berry was adjusting Addison's watch because she "took the links off[.]" [*Id.* at 28:3 to 11.] Because Addison admits that he engaged in the very conduct that resulted in Berry's refusal to adjust the watch (or at least finish adjusting it), Plaintiffs cannot show pretext. So the Court grants Defendants' summary judgment motion on Plaintiffs' Section 1981 claim.

**C. Plaintiffs' NJLAD Claim Fails**

Like Section 1981, NJLAD prohibits discrimination, but it is broader in scope. *Turner v. Wong*, 832 A.2d 340, 353-54, 358-59 (N.J. Super. Ct. App. Div. 2003) (construing § 1981 and NJLAD similarly, and noting that "§ 1981[] accomplishes the same result [as NJLAD] although phrased in the language of contract"). NJLAD makes it unlawful

> [f]or any owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof . . . on account of the . . . race . . . of such person.

N.J. Stat. Ann. § 10:5-12(f)(1); *see also id.* § 10:5-4 (providing that "[a]ll persons shall have the opportunity . . . to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of race").

To prevail on a public accommodation discrimination claim under NJLAD, Plaintiffs must show: (1) Defendants "operate[] a place of public accommodation; (2) [they are] member[s] of a protected class; and (3) [they were] denied equal treatment on the basis of [their] membership in a protected class." *Ali v. Hillstone Rest. Grp.,* 2022 WL 2128681, at *4 (D.N.J. June 14, 2022) (quoting *Vandeusen v. Mabel Realty of Bordentown, LLC*, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012)). Courts analyze a NJLAD public accommodation claim under the *McDonnell Douglas* framework. *Maultsby,* 2011 WL 6779556, at *8 (analyzing NJLAD claim under same burden-shifting framework to analyze § 1981 claim); *see also Ali*, 2022 WL 2128681, at *3 (applying *McDonnell Douglas* framework to NJLAD public accommodation discrimination claim).

Plaintiffs support their NJLAD public accommodation claim with the same evidence they do for their Section 1981 claim.  [Pls.' Opp'n Br. at 5-9.]  Plaintiffs' failure to show racial discrimination under the *McDonnell Douglas* framework for their Section 1981 claim dooms their NJLAD claim.  *Maultsby,* 2011 WL 6779556, at *8 (granting summary judgment on Plaintiff's NJLAD claim after granting summary judgment on his § 1981 claim because plaintiff could not show pretext); *see also Ali*, 2022 WL 2128681, at *5-8 (granting summary judgment on plaintiff's NJLAD public accommodation claim where plaintiff failed to present a prima facie claim of discrimination or show pretext under the *McDonnell Douglas* framework).

At any rate, Plaintiffs cannot sustain their NJLAD public accommodation claim because they failed to show unequal treatment.  *Ali*, 2022 WL 2128681, at *5-6 (granting summary judgment on plaintiff's NJLAD public accommodation claim, reasoning "[w]ithout evidence that her party was treated differently from a non-African-American party that had also been dining for several hours, Ali cannot make out a *prima facie* case of discrimination"); *Langley v. United Airlines, Inc.,* 2024 WL 3219295, at *7 (D.N.J. June 28, 2024) (dismissing NJLAD public accommodation claim where plaintiff failed to allege that individuals outside plaintiff's protected class received different treatment).  Indeed, to prevail on a NJLAD public accommodation claim, Plaintiffs "must show that 'others not within the protected class did not suffer similar adverse . . .  actions.'" *Partovi v. Felician Coll.*, 2011 WL 867275, at *8 (N.J. Super. Ct. App. Div. Mar. 15, 2011) (quoting *El-Sioufi v. St. Peter's Univ. Hosp.,* 887 A.2d 1170, 1182 (N.J. Super. Ct. App. Div. 2005)).  Earlier, the Court explained that Plaintiffs offered no comparator evidence to show that Defendants treated individuals outside Plaintiffs' race differently.  Again, the record shows Defendants provided customer service to African

Americans or individuals Plaintiffs perceived to be Black.  Without showing that Defendants treated non-African American customers differently, their NJLAD public accommodation claim fails.  *Ali*, 2022 WL 2128681, at *5-6.  Accordingly, the Court grants Defendants' summary judgment motion on Plaintiffs' NJLAD claim.

### D.  Plaintiffs' Title II Claim Fails as a Matter of Law

Plaintiffs' Title II claim fails in two ways:  (1) they have not provided the statutorily required notice to maintain a Title II claim; and (2) a jewelry store is not a place of a public accommodation under Title II.

Title II outlaws discrimination by places of public accommodation.  42 U.S.C. § 2000a(a).  To prevail on their Title II claim, Plaintiffs must show:  (1) they are "member[s] of a protected class;" (2) they "attempted to contract for services and afford [themselves] the full benefits and enjoyment of a public accommodation;" (3) they were "denied the full benefits or enjoyment of a public accommodation;" and (4) "such services were available to similarly situated persons outside [their] protected class who received full benefits or were treated better."  *Jabri v. Gonzalez*, 2024 WL 4719492, at *8 (D.N.J. Nov. 7, 2024) (citation and internal quotation marks omitted).  But before asserting a Title II claim, a plaintiff "must first notify [a] state or local government entity authorized to grant relief from the alleged discrimination or to institute criminal proceedings."  *Waiters v. Republic Bank*, 2024 WL 1928331, at *2 (D.N.J. May 2, 2024) (quoting 42 U.S.C. § 2000a-3(c)).  That notice requirement is a mandatory step the plaintiff must take "before a federal court has subject matter jurisdiction to hear the plaintiff's [Title II] claim."  *Shulick v. United Airlines*, 2012 WL 315483, at *7 (E.D. Pa. Feb. 2, 2012) (collecting cases); *see also Livingstone v. Hugo Boss Store, Atl. City, NJ*, 2021 WL 3910149, at *6 (D.N.J. Sept. 1, 2021).

Here, Title II requires Plaintiffs to comply with the state notice requirement because New Jersey "has an established government entity to address claims of racial discrimination." *Livingstone*, 2021 WL 3910149, at *6; *see also* N.J. Stat. Ann. §§ 10:5-8, 10:5-8.2. Plaintiffs have submitted no evidence that they complied with Title's II notice requirement. In fact, they have not even addressed Defendants' argument on lack of notice.[4] Without the required notice, this Court lacks jurisdiction to hear Plaintiffs' Title II claim. *See, e.g.*, *Bilello v. Kum & Go, LLC.*, 374 F.3d 656, 659 (8th Cir. 2004).

Setting aside the lack of notice, Plaintiffs' Title II claim fails as a matter of law because a jewelry store is not a "place of public accommodation." 42 U.S.C. § 2000a(a). Under Title II, a place of "public accommodation" is:

> (1) any . . . establishment which provides lodging to transient guests . . . ; (2) any . . . facility principally engaged in selling food for consumption on the premises . . . ; (3) any . . . place of exhibition or entertainment; and (4) any establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment.

42 U.S.C. § 2000a(b). That list "is comprehensive and 'excludes from its coverage those categories of establishments not listed.'" *Waiters*, 2024 WL 1928331, at *3 (quoting *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 431 (4th Cir. 2006)). Simply stated, if an establishment does not appear on Title II's list of places of public accommodation, then Title

---

[4] When a party fails to respond to an argument in opposing a summary judgment motion, like Plaintiffs did here with Defendants' arguments on lack of notice, courts treat that failure as an abandonment of the claim. *Monaghan*, 599 F. Supp. 3d at 210 (finding plaintiff abandoned claim by not responding to defendants' argument in support of summary judgment on that claim); *see also Abdullah v. Rowan Univ.*, 2024 WL 4751196, at *16 (D.N.J. Nov. 12, 2024) ("The failure to oppose a motion to dismiss— like waiving the white flag of surrender— signals to the Court that the party cannot defend the claim (or didn't mean to bring it), and thus the claim should be dismissed.").

II does not apply to that establishment.  *See id.* (holding bank not a place of public accommodation under Title II because "[b]anks are not enumerated establishments qualifying as public accommodations under the plain text of Title II").

Title II does not list a jewelry store as a place of public accommodation.  Indeed, courts throughout the country have found retail establishments, like jewelry stores, are not places of public accommodation under Title II.  *See, e.g.*, *McCrea v. Saks, Inc.*, 2000 WL 1912726, at *2 (E.D. Pa. Dec. 22, 2000) ("Congress did not intend for retail establishments such as Saks to be covered by this section."); *see also Bell v. CVS Pharmacy*, 2025 WL 1411084, at *3 (D.D.C. May 15, 2025) (holding retail pharmacies not a place of public accommodation under Title II).  Because a jewelry store is not a place of public accommodation under Title II, Plaintiffs' Title II claim fails.  Thus, the Court grants Defendants' summary judgment motion on Plaintiffs' Title II claim.

### E.  Plaintiffs' Intentional Infliction of Emotional Distress Claim Fails

Plaintiffs' intentional infliction of emotional distress (IIED) claim fails because:  (1) NJLAD preempts that claim; and (2) Plaintiffs offer no evidence of severe emotional distress.

First, NJLAD preempts Plaintiffs' IIED claim because their NJLAD and IIED claims are based on the same allegations.  [Compl. ¶ 40.]  New Jersey courts have routinely ruled that NJLAD preempts common law claims "that are (1) based on the same factual predicates and (2) seek the same relief as a plaintiff's NJLAD claim."  *Belfort v. Morgan Props., LLC*, 2018 WL 3201787, at *10 (D.N.J. June 29, 2018) (collecting cases); *see also Blount v. TD Bank, N.A.*, 2023 WL 4621881, at *16 (D.N.J. July 19, 2023) (ruling NJLAD preempted plaintiff's IIED claim "that was premised on the same conduct that serves as the basis of her NJLAD claims").  Plaintiffs here base their IIED claim on the same allegations that form their NJLAD claim,

and they seek the same relief for both claims.  [Compl. ¶¶ 40-42; *see also id.* (Counts Two and Four Wherefore Cls.).]   Because Plaintiffs have merely repackaged their NJLAD claim into an IIED claim, NJLAD preempts the IIED claim.  *See, e.g.*, *Everson v. JPMorgan Chase Bank*, 2013 WL 1934666, at *4 (D.N.J. May 8, 2013) ("Plaintiff's IIED claim is thus merely a restatement of her [NJLAD] claim, and is therefore preempted.").

Second, Plaintiffs' IIED claim fails on the merits.  To prevail on an IIED claim, Plaintiffs must show, among other things, that they suffered severe emotional distress.  *See, e.g.*, *DeAngelis v. Hill*, 847 A.2d 1261, 1272 (N.J. 2004).  "Severe emotional distress means any type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so . . . ."  *Taylor v. Metzger*, 152 N.J. 706 A.2d 685, 697 (N.J. 1998).  "It is not enough to establish that a party is acutely upset by reason of the incident. . . . [T]o be actionable, the claimed emotional distress must be sufficiently substantial to result in physical illness or serious psychological sequelae."  *Aly v. Garcia*, 754 A.2d 1232, 1236–37 (N.J. Super. Ct. App. Div. 2000).  Indeed, "[c]omplaints such as lack of sleep, aggravation, headaches and depression have been frequently deemed insufficient as a matter of law."  *Innes v. Marzano-Lesnevich*, 87 A.3d 775, 798 (N.J. Super. Ct. App. Div. 2014), *aff'd as modified,* 136 A.3d 108 (N.J. 2016).

"The severity of the emotional distress raises questions of both law and fact[,]" and as such, courts must "decide[] whether as a matter of law such emotional distress can be found, and the jury decides whether it has in fact been proved."  *Buckley v. Trenton Saving Fund Soc.*, 544 A.2d 857, 864 (N.J. 1988).  So, "[o]n summary judgment, the court may review the evidence of emotional anguish to ensure that the plaintiff met his or her burden of

production." *Amentler v. 69 Main St., LLC*, 2012 WL 28194, at *5 (D.N.J. Jan. 3, 2012) (citing *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1128 (N.J. 1989)).

Here, Plaintiffs offer no evidence that they suffered the required severe emotional distress to maintain their IIED claim. Indeed, both Singleton and Addison admit that they have not been diagnosed with, or sought treatment for, depression or anxiety. [Singleton Dep. 74:16 to 18; Addison Dep. 47:5 to 8.] They also denied seeking any treatment from a healthcare professional for any emotional or mental distress. [Singleton Dep. 74:8 to 15; Addison Dep. 46:24 to 47:3.] And Addison denied ever taking medication for a mental health issue. [Addison Dep. 47:9 to 11.]

Plaintiffs' failure to seek medical treatment for their alleged mental distress dooms their IIED claim. *Phillips v. New Jersey Transit*, 2021 WL 1661087, at *12 (D.N.J. Apr. 28, 2021) (explaining a plaintiff asserting an IIED claim "must assert that [she] suffered from a specific ailment and sought treatment for it" and dismissing IIED claim where plaintiff did not allege that she sought medical treatment (citing *Botts v. The New York Times Co.*, 2003 WL 23162315, at *9 (D.N.J. Aug. 29, 2003))); *see also Harris v. Middlesex Cnty. Coll.*, 801 A.2d 397, 406-07 (N.J. Super. Ct. App. Div. 2002) (affirming dismissal of IIED claim where plaintiffs presented no "evidence that she had sought counseling or psychiatric treatment for emotional distress"); *Aly*, 754 A.2d at 1237 (dismissing IIED claim because plaintiffs failed to meet their burden of production on emotional distress since plaintiffs did not seek medical assistance or counseling).

Setting that failure aside, Plaintiffs contend they suffered severe emotional distress because the police were called, they cried over the incident, and they felt humiliated over the incident. [Pls.' Opp'n Br. at 9-10.] But that evidence is not enough to show severe emotional

distress. *Moreau v. Walgreen Co.*, 387 F. App'x 202, 204 (3d Cir. 2010) (affirming grant of summary judgment on plaintiff's IIED and negligent infliction of emotional distress claims in a case involving shoplifting where police responded and arrested plaintiff, reasoning that plaintiff's complaints of "embarrassment, humiliation, anger, anxiety, and lack of sleep . . . are not sufficiently severe to support [an emotional distress claim] under New Jersey law"). What's more, Plaintiffs offer no evidence that their negative experience at Kay Jewelers impacted their daily functions. *Buckley*, 544 A.2d at 864-65 (holding plaintiff's IIED claim failed where plaintiff did not "claim any interference with his every day routine as a result of his mental distress"). Indeed, that negative experience did not stop Plaintiffs from shopping at other Kay Jewelers locations. [DSOMF ¶¶ 53-54; PRESP ¶¶ 53-54.] Without any evidence of severe emotional distress, Plaintiffs' IIED claim fails, and therefore, the Court grants Defendants' summary judgment motion. *Shuman v. Raritan Twp.*, 2016 WL 7013465, at *27 (D.N.J. Nov. 30, 2016) (granting summary judgment on IIED claim because plaintiff failed to present "any identified evidence of severe emotional distress").

## III.   CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Summary Judgment Motion on all Plaintiffs' claims (Docket No. 26). An accompanying Order of today's date shall issue.

<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
Chief United States District Judge

Dated: June 26, 2025